UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

KENNYON ROSHAWN JACKSON,

    Defendant.
_____/

Case No. 19-cr-20396

U.S. District Court Judge
Gershwin A. Drain

**OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE (ECF No. 25) AND DENYING DEFENDANT'S SUPPLEMENT TO MOTION FOR COMPASSIONATE RELEASE DUE TO COVID-19 PANDEMIC (ECF No. 32)**

### I. INTRODUCTION

On November 19, 2019, Defendant Kennyon Roshawn Jackson pled guilty to a violation of 18 U.S.C. § 922(g), felon in possession of a firearm. ECF No. 32, PageID.153. Subsequently, on March 10, 2020, the Court imposed a sentence below the suggested Sentencing Guideline range of 57 to 71 months. *Id.* at PageID.154. Specifically, the Court sentenced Jackson to 48 months imprisonment—concurrent to his state parole violation case—followed by 3 years of supervised release, and a

1

$100.00 special assessment. *Id*. According to Defense Counsel, including credits, the Bureau of Prison calculates Jackson's release date as September 20, 2022.[1] *Id*.

Presently before the Court is Jackson's *pro se* Motion for Compassionate Release (ECF No. 25) and the Supplement to his Motion for Compassionate Release filed by his attorney (ECF No. 32). The matter is fully briefed, and the Court will resolve the Motion without a hearing pursuant to E.D. Mich. LR 7.1(f)(2). For the following reasons, the Court will **DENY** the Motion **WITH PREJUDICE**.

## II. BACKGROUND

### A. The Underlying Offense

On April 25, 2019, Jackson was a passenger in a car traveling in Ypsilanti, Michigan. ECF No. 21, PageID.99. At the time, the Michigan Department of Corrections Absconder Recovery Unit ("MDOC ARU"), assisted by the Washtenaw County Sherriff's Office ("WCSO"), was surveilling Jackson because he was a parole absconder. *Id*. WCSO deputies observed the driver fail to signal when exiting the highway, so they pulled the car over for a traffic violation. *Id*. After approaching the vehicle, an MDOC ARU investigator identified Jackson as the absconder. *Id*. When Jackson exited the car, deputies noticed a firearm in his waistband. *Id*.

---

[1] The Government calculated Jackson's credits differently and states his anticipated release date is August 6, 2023. ECF No. 36, PageID.210.

2

On June 11, 2019, Jackson was charged with violating 18 U.S.C. § 922(g), felon in possession of a firearm. ECF No.1. He pled guilty on November 19, 2019. ECF No. 21. The Agreed Guideline Range in Jackson's Plea Agreement was 51 to 63 months. *Id.* at PageID.100. The Court imposed a sentence below the Guidelines: 48 months imprisonment—concurrent to his state parole violation case—followed by 3 years of supervised release, and a $100.00 special assessment. ECF No. 32, PageID.154. Jackson was initially incarcerated at FCI Milan, but he has been at FCI Terre Haute since March 2021. *Id.* at PageID.160. According to Defense Counsel, including his good time and jail credits, Jackson had served 28 months of his sentence at the time his motion was filed in August 2021, and he had 13 months remaining for a release date of September 20, 2022. *Id*.

### B. Jackson's Medical Background

Jackson is 29 years old. He asserts he has two conditions that put him at greater risk for severe illness from COVID-19. ECF No. 25. First, Jackson avers he has hypertension, ECF No. 32, PageID.171, though the Government contends he has not received an official diagnosis, ECF 36, PageID.211. The condition is hereditary on his mother's side of the family, ECF No. 25, PageID.144, and Jackson had several elevated blood pressure readings between January 2020 and March 2021, ECF Nos. 34-3, 34-4. Second, Jackson has a documented history of asthma and is prescribed two inhalers: Albuterol and Asmanex. ECF No. 32, PageID.172. In

3

March and April of 2021, Jackson had three medical exams related to difficulty breathing and subsequent increased inhaler usage. ECF No. 34-5. However, all three examiners indicated that he seemed fine during the visits. *Id*.

Jackson was offered and refused the Pfizer COVID-19 vaccine in April 2021. ECF No. 39-1. He ultimately received the first dose of the Moderna vaccine on July 30, 2021 and the second dose on August 26, 2021. *Id*. Briefing on this Motion was complete before booster shots became available, so the Court is unaware if Jackson has received one at this time.

### C. Procedural Background

Jackson filed a request for Compassionate Release with the Warden at FCI Milan on January 19, 2021. ECF No. 32, PageID167. He based the request only on his asthma. ECF No. 36, PageID.216. He did not mention the COVID-19 pandemic, any other medical conditions, or any other risk factors. The Warden denied the request on February 10, 2021. ECF No. 32, PageID167.

Subsequently, on July 30, 2021, Jackson filed in this Court a *pro se* Motion for Compassionate Release. ECF No. 25. In it he seeks early release in light of the "massive breakout" of COVID-19 at FCI Terre Haute because his history of severe asthma and high blood pressure put him at high risk for complications from the virus and because he has been denied nebulizers, which assist his breathing. *Id.* at

4

PageID.144. The Court appointed the Federal Community Defender to assist Jackson with his motion. ECF No. 27.

Through counsel, Jackson submitted a supplemental brief in support of his Motion for Compassionate Release on August 18, 2021. ECF No. 32. He argues for relief based on the following grounds: the existence of COVID-19 within FCI Terre Haute, the facility's inability to implement CDC guidance for limiting the spread of the virus, and because Jackson's hypertension, asthma, and race place him at a higher risk of severe illness from COVID-19. *Id.* at PageID.167-73. Jackson further asserts receiving the COVID-19 vaccine does not preclude him from Compassionate Release. *Id.* at PageID.173-75. Finally, Jackson contends the § 3553(a) factors weigh in favor of release because he (1) pled guilty and apologized for his conduct, (2) is 29 and serving his first sentence of imprisonment, (3) had a difficult childhood, (4) has a post-release plan, (5) has served/received credit for a significant portion of his sentence, most of which was completed during the COVID-19 lockdown. *Id.* at PageID.175-78.

The Government contests Jackson's motions for release. ECF No. 36. It avers Jackson has not satisfied his statutory exhaustion requirement. *Id.* at PageID.216-21. Additionally, the Government claims there are no extraordinary and compelling reasons for Jackson's release because he has never been diagnosed with hypertension and he has received both doses of the Moderna COVID-19 vaccine, so

5

the hypertension and asthma should no longer qualify as risk factors for severe illness. *Id.* at PageID.224. Jackson's race should not be considered an extraordinary and compelling reason either, the Government asserts, because the disparity in deaths and hospitalizations among African Americans is most likely due to "[l]ong-standing systemic health and social inequities." *Id.* at PageID.227 (citation omitted). Finally, the Government argues the § 3553(a) factors militate against release because Jackson (1) was only 18 months into a 48-month sentence at the time of filing; (2) has multiple juvenile adjudications, convictions, including for assault with intent to do great bodily harm less than murder and felony firearm, as well as probation and parole violations; (3) risks exposing his grandmother to COVID-19 if he lives with her post-release; (4) continues to be a danger to the community; and (5) has committed crimes while on parole in the past. *Id.* at PageID.229-33.

On October 18, 2021, the Government filed a Notice of Supplemental Authority, directing the Court to a decision recently published by the United States Court of Appeals for the Sith Circuit: *United States v. Lemons*, 15 F.4th 747 (6th Cir. 2021). ECF No. 41. The Government avers *Lemons* "confirms that the defendant's motion for compassionate release based on reasons related to the COVID-19 pandemic should be denied." *Id.* at PageID.323. This is because, "with access to the vaccine, an inmate largely faces the same risk from COVID-19 as those who are not incarcerated." *Id.* at PageID.323-24 (quoting *Lemons*, 15 F.4th at 751). While

6

the Sixth Circuit acknowledged an exception for inmates "'unable to receive or benefit from [the] vaccine' and who 'present a compelling reason justifying the failure to be vaccinated despite access to the vaccine[,]'" the Government contends this does not apply to Jackson, who is vaccinated and has not made an individualized showing he was unable to receive its benefits. *Id.* at PageID.324 (quoting *Lemons*, 15 F.4th at 751). Jackson did not file a response to the Government's Notice.

### III. LAW & ANALYSIS

**A. Legal Standard**

Title 18 U.S.C. § 3582(c)(1)(A) governs this Court's authority to consider motions for compassionate release. As amended by the First Step Act of 2018, the relevant statutory language provides that a court may grant compassionate release under the following circumstances:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction.

7

18 U.S.C. § 3582(c)(1)(A)(i).

The United States Court of Appeals for the Sixth Circuit recently delineated the three-step test district courts generally employ when evaluating whether compassionate release is warranted under § 3582(c). *See United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020). Specifically, the district court looks to (1) whether "extraordinary and compelling" reasons warrant a reduction in sentence; (2) whether such a reduction is consistent with the Sentencing Commission's applicable policy statements; and (3) whether the reduction in sentence is appropriate after considering the factors set forth in 18 U.S.C. § 3553(a). *Id.* "[D]istrict courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others." *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021)

The *Jones* court further held the Sentencing Guidelines Policy Statement § 1B1.13 did not "wholly survive the First Step Act's promulgation." *Jones*, 980 F.3d at 1108  Indeed, the Sixth Circuit recently held that this policy statement is not an "applicable" policy statement for defendant-initiated motions, and therefore district courts "need not consider it when ruling on those motions." *Elias*, 984 F.3d at 519. Accordingly, district courts "may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *Jones*, 980 F.3d at 1111.

8

## B. Discussion

### 1. Exhaustion

The First Step Act of 2018 amended 18 U.S.C. § 3582 to permit defendants to move for compassionate release themselves. First Step Act § 603(b), Pub. L. No. 115-319, 132 Stat. 5194, 5239 (Dec. 21, 2018). In a defendant-initiated motion for compassionate release, the district court may not act on the motion unless the defendant files it "after" either completing the administrative process within the Bureau of Prisons ("BOP") or waiting thirty days from when the warden at his facility of confinement received his or her request. 18 U.S.C. § 3582(c)(1)(A).

The Sixth Circuit has held that while the administrative exhaustion requirements under § 3582(c)(1)(A) are not jurisdictional; they are mandatory. *United States v. Alam*, 960 F.3d 831 (6th Cir. 2020). In *Alam*, the Sixth Circuit rejected the defendant's argument that the "unprecedented" nature of the COVID-19 pandemic should serve as an exception to the statute's exhaustion requirement. *Id.* at 835-36 ("The seriousness of COVID-19 and its spread in many prisons make it all the more imperative that the prisons have authority to process these applications fairly and with due regard for the seriousness of each inmate's risk.").

The parties here dispute exhaustion. The Government concedes Jackson sent a request for compassionate release to the Warden of FCI Milan, but argues the request was only based on Jackson's asthma. ECF No. 36, PageID.216-17. In

9

contrast, his *pro se* Motion before this Court seeks compassionate release based on his asthma and high blood pressure as well as the Covid-19 pandemic. *Id.* at PageID.217. Jackson's supplemental motion, submitted by counsel, raises the same grounds as his *pro se* motion in addition to Jackson's race. *Id.* The Government essentially asserts that § 3582(c)(1)(A) requires issue-specific exhaustion, which Jackson has not satisfied. *Id.* at PageID.218 ("Section 3582(c)(1)(A) also means that an inmate may not move for compassionate release on a different ground than the one he raised during the administrative process."). Jackson objects and argues he complied with the requirement because the Warden denied his request on February 10, 2021. ECF No. 32, PageID.167

Courts in this District are split on whether failure to include all the factual bases in the administrative request can satisfy § 3582(c)(1)(A)'s exhaustion requirement. For example, the administrative request made by the defendant in *United States v. Asmar*, 465 F. Supp. 3d 716 (E.D. Mich. 2020) did not reference any of the health conditions on which he relied in his motion for compassionate release before the court. *Id.* at 719. The court (Steeh, J.) held,

> Where the factual basis in the administrative request and the motion before the court are different, a defendant does not satisfy the exhaustion requirement because he does not give the BOP an opportunity to act on the request before Defendant brings his request to the courts."

10

> There is an undeniable value in having the BOP make the initial review before an inmate is released. The BOP is already responding to the pandemic—not just through heightened safety measures, but by evaluating its entire prison population for home confinement. By requiring a defendant to exhaust, § 3582(c)(1)(A) gives the BOP the opportunity to gather an inmate's medical documentation and other records, evaluate the request, and decide in the first instance whether it justifies seeking compassionate release or pursuing some other form of relief.

*Id.* (internal citations omitted).

In contrast, in *United States v. Williams,* 473 F. Supp. 3d 772, 775 (E.D. Mich. 2020), the Government argued the defendant "did not articulate any argument based on Covid-19" in his letter to the warden. *Id.* at 774. Yet, the court (Lawson, J.) held

> the statutory ground for the request has not changed from when it first was submitted; the defendant seeks now, as he did at the administrative level, release based on "extraordinary and compelling circumstances," under the authority of 18 U.S.C. § 3582(c)(1)(A)(i). He described several circumstances in his administrative petition that he felt were extraordinary and compelling. He now advances others, which have arisen since the request first was tendered. But the underlying authority and ground for the relief sought has not changed, and it would be inappropriate under the circumstances to impose any further exhaustion requirement, which in any event is not mandated in any plain terms of the statute. The BOP certainly well knew, and now knows, about the pandemic and the risks to inmates, as its published reports and directives evidence. It has had more than ample time to act on the defendant's February request, having before it all of the pertinent information about both the defendant and the circumstances that pose risks to his health.

11

*Id.* at 775 (internal citations omitted).

The only appellate court to address this issue held issue-specific exhaustion is necessary in the compassionate release context. *United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021) ("[B]ecause Williams never asked the Bureau to move the district court for his release based on the presence of COVID-19 at his prison and his risk of infection, his counsel could not properly file a motion for compassionate release on that basis."). Nevertheless, "the majority of district courts . . . hold[] that issue exhaustion is not required." *United States v. Sherrod*, No. 19-20139, 2021 WL 3473236, at *2 (E.D. Mich. Aug. 6, 2021).

"Ultimately, this Court need not decide whether § 3582(c)(1)(A) requires issue-specific exhaustion. Even assuming that [Jackson] fully complied with the mandatory exhaustion requirement, his motion for compassionate release fails on the merits, as discussed below." *United States v. Sykes*, No. 03-80028, 2021 WL 5629977, at *3 (E.D. Mich. Dec. 1, 2021).

### 2. "Extraordinary and Compelling Reasons" Warranting Release

For a court to grant compassionate release, the defendant must demonstrate "extraordinary and compelling reasons" exist to warrant a reduction in his sentence. 18 U.S.C. § 3582(c). Section 3582 does not define "extraordinary and compelling reasons." Thus, "district courts have discretion to define 'extraordinary and compelling' on their own initiative." *Elias*, 984 F.3d at 519-20; *see also Jones*, 980

12

F.3d at 1108-11. But "discretion" does not mean the court's power is without limit. *United States v. Hunter*, 12 F.4th 555, 562 (6th Cir. 2021).

As discussed above, the Sixth Circuit has recently held that "a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction." *Lemons*, 15 F.4th at 751 (citing *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021)). This is unless the defendant can show he is "unable to receive or benefit from a vaccine." *Id*. The Court declined to "debate the medical implications of [the defendant's] condition," whose condition has not been identified by the Centers for Disease Control and Prevention ("CDC") as one that increased the risk of severe illness for COVID-19. *Id*. Specifically, the court stated, "following full vaccination, it is now well understood, both the likelihood of contracting COVID-19 and the associated risks should one contract the virus are significantly reduced." *Id*.

Here, Jackson's asthma and purported hypertension have been recognized by the CDC as conditions that may increase the risk of severe illness from COVID-19. *See Coronavirus Disease 2019 (COVID-19): People With Certain Medical Conditions*, CDC, https://perma.cc/8F2E-4JEK (last visited Dec. 17, 2021). While this distinguishes him from the defendant in *Lemons*, the Sixth Circuit is clear this is a distinction without a difference. 15 F.4th at 751. Jackson has already been

13

vaccinated, and he did not respond to the Government's Notice (ECF No. 41) to demonstrate that he is unable to benefit from the vaccine. Therefore, "his health conditions coupled with the COVID-19 pandemic do not amount to an 'extraordinary and compelling reason' warranting a sentence reduction. "*United States v. Till*, No. 17-CR-20311, 2021 WL 5506441, at *3 (E.D. Mich. Nov. 24, 2021) (quoting *Lemons*, 15 F.4th at 751).

### 3. 18 U.S.C. § 3553(a) Factors

Even if Jackson could establish "extraordinary and compelling reasons" warrant his release, his Motion for Compassionate Release would fail because the sentencing factors under 18 U.S.C. § 3553(a) weigh against him.

The § 3553(a) factors are

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed—
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for—
    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
        ....

>(5) any pertinent policy statement—
>
>....
>
>(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
>(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). "A district judge need not specifically articulate its analysis of every single § 3553(a) factor" if "the record *as a whole* demonstrates that the pertinent factors were taken into account." *Jones*, 980 F.3d at 1114. Moreover, a court's "initial balancing of the § 3553(a) factors during [defendant's] sentencing remains an accurate assessment as to whether those factors justify a sentence reduction, meaning [the defendant] must make a compelling case as to why the sentencing court's § 3553(a) analysis would be different if conducted today." *United States v. Sherwood*, 986 F.3d 951, 954 (6th Cir. 2021).

The Court finds Jackson has not made a compelling case for the Court to change its § 3553(a) analysis. During Jackson's sentencing in March 2020, this Court considered the various § 3553(a) factors. *See, e.g.*, ECF No. 22, PageID.120-23; ECF No. 23, PageID.130-134. Indeed, this Court sentenced Jackson below the Guideline Range of 57 to 71 month to 48 months. ECF No. 32, PageID.154.

Presently, Jackson has not demonstrated what, if anything, has changed with respect to his § 3553(a) factors since his sentencing. The nature of his offense remains serious and concerning—Jackson absconded from parole only to be

15

ultimately arrested as, and plead guilty to being, a felon in possession of a firearm—as does his criminal history—which includes a conviction for assault with intent to do great bodily harm for shooting someone in the face. *See* ECF No. 21. Similarly, the Court was aware of, and considered at the time of sentencing, Jackson's difficult childhood and the need for his sentence to provide punishment, protect the public, and provide corrective treatment. *See, e.g.*, ECF No. 22, PageID.120-23; ECF No. 23, PageID.130-134.

Instead of arguing that anything has changed, Jackson relies on his post-release plan and the amount of time he has already served. *See, e.g.*, ECF No. 32, PageID.175-77. Yet Jackson already offered post-release plans at his initial sentencing. *Id.* at PageID.176 ("Defendant apologized for his conduct and indicated that he planned to further his education and obtain a trade in home construction to support himself upon his release."). Moreover, at this time, Jackson is still only approximately 21 months into a 48-month sentence. The Court agrees with the Government this does not "reflect[] the seriousness of the offense, promote[] respect for the law, and provide[] just punishment for the offense, especially given his criminal history and demonstrated inability to abide by conditions set by the courts." ECF No. 36, PageID.230.

In sum, the Court concludes the § 3553(a) sentencing factors weigh against Defendant's early release.

16

## IV. Conclusion

Accordingly, for the reasons articulated above, **IT IS HEREBY ORDERED** that the Court **DENIES** Jackson's Motion for Compassionate Release (ECF No. 25) and his Supplement to Motion for Compassionate Release (ECF No. 32) **WITH PREJUDICE**.

**IT IS SO ORDERED**.

                                          s/Gershwin A. Drain
                                          GERSHWIN A. DRAIN
                                          UNITED STATES DISTRICT JUDGE

Dated: January 11, 2022

### CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
January 11, 2022, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager